**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:19-cv-24218-ALTONAGA/Goodman**

______________________________________/

ANNETTE BARNES, et al., :

Plaintiffs, :

vs.

:

CS MARKETING LLC, et al.,

:

Defendants.

______________________________________:

# DEFENDANTS' JOINT MOTION TO STAY

Defendants Insurance Care Direct, Inc. ("ICD"), CS Marketing, LLC, ("CS Marketing"), Health Insurance Innovations, Inc. ("HII"), MHP Insurance Solutions, LLC ("MHP"), and USHealth Advisors, LLC ("USHealth") (collectively, "Defendants") move to stay these proceedings pending (1) the issuance of guidance by the Federal Communication Commission ("FCC") governing what constitutes an "automatic telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act ("TCPA"); and (2) the Eleventh Circuit's resolution of the appeal in *Glasser v. Hilton Grand Vacations Co., LLC,* No. 8-14499 (appeal filed October 24, 2018, oral argument held December 6, 2019), which also relates to what constitutes an ATDS. Because the instant case turns, in part,[1] on the issue of what constitutes an ATDS, it serves the

---

[1] In addition to the issue of whether the dialing system used by AWL was an ATDS as contemplated by the TCPA, the case also turns on whether Plaintiffs can show that AWL acted as the agent for each of the Defendants in making the subject calls, such that Defendants can be held vicariously liable.

interests of efficiency and judicial economy to stay this case pending the outcome of those two matters.

## I. **BACKGROUND**

The Plaintiffs bring this putative class action against the Defendants for alleged violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii). This provision generally prohibits non-emergency autodialed calls to cell phone numbers unless the call is made with "the prior express consent of the called party." *Id.*; *see* Complaint [ECF 1] at ¶ 28. Specifically, the TCPA states in relevant part: "It shall be unlawful for any person within the United States … (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

Plaintiffs allege that they, and each of the putative class members, visited a website (www.affordable-health-insurance-plans.org), which had been set up by non-party marketing company All Web Leads, Inc. ("AWL"), for the purpose of obtaining health insurance quotes online. *Id.* at ¶ 40. After Plaintiffs visited AWL's website, AWL placed unsolicited telemarketing calls to them and the other putative class members for the purposes of selling insurance. (Complaint at ¶ 42) Plaintiffs allege that when a consumer communicated interest in purchasing insurance, AWL would transfer those calls to the Defendants. *Id.* at ¶ 38.

Plaintiffs allege that the dialing system used by AWL to place the calls to the Plaintiffs and putative class members was an ATDS, as that term is defined by the TCPA. *Id.* at ¶ 117. Specifically, Plaintiffs allege, among other things, that AWL used a "predictive dialing system of

the sort that constitutes an ATDS under the TCPA," that "[t]he All Web Leads dialing system used by Defendants has the capacity to store telephone numbers to be called in a database," and that "[t]he All Web Leads dialing system used by Defendants has the capacity to produce telephone numbers to be called." (*Id.* ¶¶ 116-133.) Therefore, whether AWL's dialing system was an ATDS under the TCPA is a dispositive threshold issue in the case.

The TCPA and its implementing regulations issued by the FCC define an ATDS to be "equipment which has the capacity . . . to (A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B); *see* 47 C.F.R. § 64.1200(f)(2). The FCC is authorized to prescribe rules and regulations to implement the requirements of the TCPA, which include the interpretation of the TCPA's terms. *See id.* at § 227(b)(2).

However, as both the FCC and the courts recently have noted, there is "a significant fog of uncertainty about how to determine if a device is an ATDS so as to bring into play the restrictions on unconsented calls." *ACA Int'l v. FCC*, 885 F.3d 687, 703 (D.C. Cir. 2018); *see* FCC Public Notice, *Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, 2 (May 14, 2018) (hereinafter, the "May 2018 Public Notice") (questioning "how to interpret 'capacity' [in the ATDS definition] in light of the [*ACA International*] court's guidance").

In the case of *ACA International v. FCC*, the Eleventh Circuit discussed the FCC's guidance as to ATDS, noting that it took the contradictory position that "the 'basic function' of an autodialer is to dial numbers without human intervention, but a device might still qualify as an autodialer even if it cannot dial numbers without human intervention." *Id.*, 885 F.3d at 703, discussing *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 30 F.C.C. Rcd. 7961 (2015). The Court found the FCC's contradiction as to which functions qualify

a device as an ATDS sufficient to set aside FCC guidance on such matters. *ACA Int'l*, 885 F.3d at 703.

Since the decision in *ACA Int'l*, the FCC has twice sought public comment on how to interpret and apply the TCPA's statutory definition of ATDS. *See* May 2018 Public Notice (**Exhibit A**); FCC Public Notice, *Consumer & Governmental Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision,* 2018 WL 4801356 (Oct. 3, 2018) (attached hereto as **Exhibit B**).[2] In addition, the U.S. Chamber of Commerce Institute for Legal Reform and 17 co-petitioners filed a joint trade petition with the FCC, seeking declaratory rulings that (1) to be an "ATDS," equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention; and (2) only calls made using actual ATDS capabilities are subject to the TCPA. The petition was filed in response to the D.C. Circuit's decision to overturn the FCC's interpretation of ATDS in the 2015 Omnibus TCPA Order, and argues "the court provided a logical roadmap for how the Commission should interpret ATDS."

Meanwhile, the Eleventh Circuit is poised to consider the definition of an ATDS in the case of *Glasser v. Hilton Grand Vacations Company, LLC,* No 18-14499. In *Glasser*, the plaintiff alleged that defendant Hilton Vacations used an ATDS to place multiple, unauthorized telemarketing phone calls to the plaintiff and others. 8:16-cv-952-JDW-AAS (M.D. Fla. Apr. 20, 2016), Complaint (ECF 1) ¶¶ 9, 13, 16. However, the dialing system used by the defendant required a clicker agent to manually click a button to place calls. *Glasser v. Hilton Grand*

---

[2] The Court may take judicial notice of the Public Notices, comments submitted in response, and petitions to the FCC requesting declaratory rulings. *See, e.g.*, *Piscatelli v. Brand*, No. 14–80058–CIV, 2014 WL 1479168, at *1 n.2 (S.D. Fla. Apr. 14, 2014) ("The Court is permitted to [sic] judicial notice of documents made publicly available by a government entity.").

*Vacations Co.*, 341 F.Supp.3d 1305, 1313 (M.D. Fla. 2018). The district court granted summary judgment in favor of defendant Hilton Vacations, finding that the undisputed evidence showed that, for numbers to be dialed, human intervention was necessary – "the antithesis of a predictive dialer." *Id.* at 1314.

The plaintiff in *Glasser* appealed the decision, and the sole issue on appeal is whether the district court erred in granting summary judgment to Hilton on the grounds that the dialing system Hilton used did not constitute an ATDS as defined by the TCPA. *See Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, Case No. 19-20073, Order Administratively Closing Case [ECF 81], at 4. Oral argument in the *Glasser* appeal was scheduled for December 6, 2019.

## II. <u>ARGUMENT</u>

### A. Applicable Law

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v.* Jones, 520 U.S. 681, 706 (1997) (citation omitted); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Johnson v. Board of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling." (alteration added; citations omitted)). In the "interest of judicial economy," courts can "order a stay of [a] proceeding pending the outcome of [an] appeal." *Lozman v. City of Riviera Beach*, No. 08-80134-CIV, 2011 WL 13107422, at *4 (S.D. Fla. May 4, 2011). Thus, this Court may stay this case pursuant to its inherent powers to control its docket. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).

### B. Staying This Litigation Pending FCC Guidance and the Eleventh Circuit's Consideration of *Glasser* Is Appropriate

A stay is warranted here pending FCC guidance and the Eleventh Circuit's resolution of the dispositive threshold issues central to this lawsuit on what constitutes an ATDS. If the FCC adoptions a definition which provides, as the defendant in *Glasser* suggests, that to be an ATDS, equipment must (a) use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention, or (b) that predictive dialers do not meet the statutory ATDS definition, that decision would bind this Court and mandate dismissal or summary judgment in Defendants' favor.

In light of the above, a stay would promote judicial economy, conserve both the Court's and parties' resources, and promote uniformity of decision without prejudicing the Plaintiffs. Without the Eleventh Circuit's decisions (and FCC's ruling for that matter), the Court and the parties will be prejudiced by proceeding to discovery, summary judgment and trial without knowing how the Eleventh Circuit will rule on these dispositive issues, thereby inviting disputes about the definition of an ATDS and whether the dialing system used by AWL to make the calls at issue in this case. Thus, without a stay, prejudice could result because a new trial and re-litigation of pre-trial motions would be required if the Court makes rulings (including by ordering jury instructions) that end up conflicting with the Eleventh Circuit's and FCC's rulings.

A stay pending the FCC's and Eleventh Circuit's rulings also would be in line with this and other courts' decisions staying TCPA suits based on their inherent powers to control their dockets. *See Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, 19-20073-CIV (S.D. Fla.), Order Administratively Closing Case [ECF 81], filed July 15, 2019; *Reyes v. BCA Financial Services, Inc.*, No. 16-24077-Civ-Goodman Order Granting Defendant's Motion to Stay Proceedings [ECF No. 200]; *Buhr v. ADT, Inc.,* No. 18-80605-Civ, Order Granting Motion to Stay [ECF No. 40],

filed July 25, 2018; *Secure v. Ultimate Fitness Group,* LLC, No. 18-20483-Div, Order Granting Motion to Stay [ECF No. 64], filed March 18, 2019 (S.D. Fla. 2019); see *also Miller v. Directv, LLC*, No. CV 14-07579, 2015 WL 12656912, at *3 (C.D. Cal. Jan. 8, 2015) ("In the interests of conserving the parties' and the Court's resources and preventing inconsistent rulings and requests for reconsideration that may ensue, the Court instead *sua sponte* exercises its prudential authority to stay the action pending the FCC's resolution of the . . . Petitions"); *Fontes v. Time Warner Cable Inc*., No. 2:14-CV-02060-CAS, 2014 WL 2153919, at *2 (C.D. Cal. May 19, 2014) ("A stay is appropriate because it increases the likelihood that the Court will be able to address the parties' arguments after the FCC has acted on the Petitions.").

A stay, in all events, will conserve judicial and party resources, prevent inconsistent rulings, and promote fairness in decisions on ATDS and standing issues on which the Eleventh Circuit and FCC appear poised to issue authoritative interpretations.

### C. Staying This Litigation Pending the FCC's Release of Guidance is Also Appropriate Under the Primary Jurisdiction Doctrine

A stay is also appropriate in this case based on the primary jurisdiction doctrine. "[T]he doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63-64 (1956). Under the doctrine, a court may stay proceedings to give the parties time to seek an administrative ruling on an issue within the special competence of an administrative agency. *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)).

"[T]he main justifications for the rule of primary jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes,* 199 F.3d at

1265 (quoting *Cty. of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1310 (2d Cir. 1990)). Accordingly, "[t]here are four factors uniformly present in cases where the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *United States v. Gen. Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir. 1987) (citing *Ricci v. Chi. Mercantile Exch.,* 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973); *Western Pac. R Co.,* 352 U.S. 59; *United States v. Pac. & A. R. & Nav. Co.,* 228 U.S. 87 (1913); *United States v. Yellow Freight Sys., Inc.*, 762 F.2d 737 (9th Cir.1985)).

Each of the primary jurisdiction factors warrant staying this litigation:

**1. Need to Resolve the Issue**

The first primary jurisdiction doctrine factor – the need to resolve an issue, *Greenfield v. Yucatan Foods, L.P.*, 18 F. Supp. 3d 1371, 1376 (S.D. Fla. 2014) – warrants a stay here. Whether AWL used an ATDS to place the telephone calls described in Plaintiffs' Complaint is dispositive of this litigation. And, where the FCC's pending ruling concerns the exact issue presented in this litigation, the primary jurisdiction doctrine is especially applicable. *Hart v. Comcast of Alameda*, No. C076350 PJH, 2008 WL 2610787, at *2 (N.D. Cal. June 25, 2008) (staying TCPA case where the FCC was considering petitions on "the precise issue raised by plaintiff" and, thus, "is already using its recognized expertise to consider some of the exact questions placed before the court here, in an effort to promote uniformity in . . . regulation").

To be sure, the FCC is currently considering the issues raised by the Joint Trade Petition (and other issues):

> [W]e seek comment on what constitutes an "automatic telephone dialing system." . . . We seek comment on how to interpret "capacity" in light of the [*ACA*

> *International*] court's guidance. . . . We seek further comments on the functions a device must be able to perform to qualify as an [ATDS]. . . . How "automatic" must dialing be for equipment to qualify as an [ATDS]? Does the word "automatic" "envision non-manual dialing of telephone numbers"? Must such a system dial numbers without human involvement? . . . "[D]oes the bar against 'making any call using' an [ATDS] apply only to calls made using the equipment's [ATDS] functionality? . . . If a caller does not use equipment as an [ATDS], does the statutory prohibition apply?

Public Notice, at 1-3; *compare with* Joint Trade Petition, at i, 20, 27. The FCC also is considering whether a predictive dialer that calls from a list of specific telephone numbers is an ATDS. *See* Public Notice, at 2-3 & n.19; *see also* Joint Trade Petition, at 22 n.40 & 24-25 ("The FCC should make clear that if human intervention is required in generating the list of numbers to call or in making the call, then the equipment in use is not an ATDS. . .").

Given the above, the FCC could determine that the mere ability of a random or sequential number generator to store and produce numbers, and dial those numbers, is not enough for equipment to constitute an ATDS. Rather, the FCC may well conclude that those telephone numbers must be able to be dialed without any human involvement as the Joint Trade Petition requests for the equipment to qualify as an ATDS. The FCC also may issue a decisive ruling that predictive dialers, which call telephone numbers from a specific list are not considered ATDSs. And, if the FCC does any of these things, then Plaintiffs' Complaint must be dismissed because, as a matter of law, an ATDS was not used to make the calls.

Because the FCC currently is considering what constitutes an ATDS, and because the definition of an ATDS is potentially outcome determinative of this litigation, the Court should stay this action on primary jurisdiction grounds.

**2. The Issue Has Been Placed in the FCC's Regulatory Authority**

The second primary jurisdiction doctrine factor – whether the question at issue has been placed by Congress within the jurisdiction of an administrative body having regulatory authority, *Greenfield*, 18 F. Supp. 3d at 1376 – supports a stay too.

The FCC unquestionably has jurisdiction to decide whether certain technology constitutes an ATDS, and the agency is poised to decide that issue, as "[t]he TCPA vests the FCC with the authority to 'prescribe regulations to implement the requirements of [the statute].' This includes issuing rules clarifying and interpreting the TCPA, as well as addressing petitions like" the Joint Trade Petition and the ATDS issues raised *sua sponte* by the FCC in its Public Notice. *M3 USA Corp.*, 2017 WL 4868185, at *2 (citations omitted). "'The implementation and interpretation of the TCPA have been placed squarely within the jurisdiction of the FCC.'" *Freeman v. Specialty Retailer Inc.*, No. CV H-14-2691, 2015 WL 12804530, at *2 (S.D. Tex. Jan. 20, 2015) (staying TCPA litigation pending FCC ruling on petition) (quoting *Pickens*, 2014 WL 4662512, at *2). As this Court recently observed in *M3 USA Corp.*, "[w]here, as here, 'the resolution of Plaintiff's cause of action would require interpreting and considering technical terms and industry policies[ ], [s]uch an endeavor is clearly within the FCC's precise field of expertise and discretion and outside of the conventional experience of the Court.'" *M3 USA Corp.*, 2017 WL 4868185, at *3 (citing *Stewart v. T-Mobile USA, Inc.*, No. 4:14-CV-02086-PMD, 2014 WL 12614418, at *4 (D.S.C. Oct. 8, 2014)).

The TCPA's definition of ATDS, the meaning of "capacity" within that definition, and whether a predictive dialer is an ATDS, are determinations that have led to conflicting decisions and varied interpretations amongst the courts both before and since *ACA International*. *See Wright v. Lyft, Inc.*, C14-421 MJP, 2015 WL 12977403, at *3 (W.D. Wa. Jan. 5, 2015) (granting stay pending FCC determination of petitions concerning ATDS definition because, among other

reasons, "courts have taken varied approaches to interpreting 'ATDS' creating a conflicting body of law"); *see also* Section II(C), *supra* (discussing split in authority regarding whether *ACA International* vacated FCC's prior predictive dialer orders and whether predictive dialers falls within the ATDS definition after *ACA International*). As such, the determination of whether a calling platform's functionality does or does not fall within the TCPA's definition of ATDS involves technical and policy considerations that are within the FCC's purview. *Fried v. Sensia Salon, Inc.*, No. 4:13-CV-00312, 2013 WL 6195483, at *4 (S.D. Tex. Nov. 27, 2013) ("The FCC has particular expertise in this field of telecommunications [*i.e.*, the definition of ATDS], enabling the agency to make a decision based on technical and technological knowledge not necessarily available to this Court. . . . [T]he FCC is in prime position to determine whether the use of this technology violates the TCPA.").

The TCPA is a statute within the FCC's particular field of expertise, and Congress vested the Commission with considerable authority to implement it. *See, e.g.*, *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010) (holding that district court should have invoked the doctrine of primary jurisdiction to allow FCC to address issues involved in litigation; "Congress vested the FCC with considerable authority to implement the [TCPA]. . . . In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the TCPA and its implementing regulations") (citation omitted); *Wright*, 2015 WL 12977403, at *3 ("Congress has vested in the FCC considerable authority to make rules and regulations to implement the TCPA.").

A cornerstone issue in this dispute – whether AWL made telephone calls with an ATDS by using a predictive dialer as alleged in the Complaint – is a complex, technical, and policy-driven question within the FCC's discretion. *ACA Int'l*, 885 F.3d at 699 ("Congress need not be presumed

to have intended the term '[ATDS]' to maintain its applicability to modern phone equipment in perpetuity, regardless of technological advances that may render the term increasingly inapplicable over time."); *Charvat*, 630 F.3d at 467 ("Only the FCC can disambiguate the word[s]" in the TCPA and "all we can do is make an educated guess"). The FCC has technical, TCPA-related, expertise that is perfectly suited for evaluating complicated and ever-changing dialing technology, and such technologies' uses in everyday operations for telemarketing purposes, such as the calls that underlie Plaintiffs' Complaint. *Id.*

Further, the FCC regularly considers these technological issues. *Charvat*, 630 F.3d at 467 ("The agency, no surprise, is familiar with the regulations ***it*** prescribed, and possesses expertise over the statute it implements[.]") (emphasis in original); *Pickens*, 2014 WL 4662512, at *2 (FCC "has expertise in the telecommunications area due to the fact that the TCPA . . . ha[s] been entrusted to its care for interpretation and implementation"). "It is virtually without dispute that the FCC has comparative expertise with regard to the TCPA." *Stewart*, 2014 WL 12614418, at *4.

Accordingly, the second primary jurisdiction factor supports the issuance of a stay here, especially because the FCC's ruling "will clearly aid the resolution of this lawsuit." *Freeman*, 2015 WL 12804530, at *2. Indeed, "it is more efficient to simply wait for the FCC to do what it has already been asked [and agreed] to do," than for this Court to proceed further with this litigation before the FCC's forthcoming ruling. *Gensel v. Performant Techs., Inc.*, No. 13-C-1196, 2015 WL 402840, at *3 (E.D. Wis. Jan. 28, 2015) (staying TCPA action involving Avaya calling platform pending FCC ruling on several petitions; "[t]he Court will be in a better position to proceed to judgment with definitive guidance from the FCC").

**3. The Issue Involves a Comprehensive Regulatory Scheme**

The third primary jurisdiction doctrine factor – whether the question at issue involves a statute that subjects an industry or activity to a comprehensive regulatory scheme, *Greenfield*, 18 F. Supp. 3d at 1376 – also favors a stay. It is beyond reasonable dispute that the TCPA subjects the telecommunications industry to a comprehensive regulatory scheme. *See, e.g.*, 47 U.S.C. § 151 (purposes of chapter include "regulating interstate and foreign commerce in communication by wire and radio"). The TCPA was passed to regulate the use of the telephone to market goods and services to the home and other businesses. Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). Congress specifically tasked the FCC with prescribing regulations to implement the TCPA's requirements. 47 U.S.C. § 227(b)(2).

**4. The Issue Requires Expertise and Uniformity in Administration**

Deferring this case pending the FCC's rulemaking proceeding promotes uniform application of the FCC's expertise – the fourth primary jurisdiction factor. *Greenfield*, 18 F. Supp. 3d at 1376. A stay will also prevent rulings inconsistent with the FCC's determination. *See Mical Comm's, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1040 (10th Cir. 1993) (staying an action because of the possibility that "a decision by this court prior to the FCC's response to the ACI petition would result in conflicting decisions, either between our court and the FCC or our court and another circuit if the FCC ruling is appealed."). If the FCC finds that, to be an ATDS, equipment must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention; or that predictive dialers are not autodialers, that determination will be binding on this Court. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) (citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1114 (11th Cir. 2014)) (holding that district courts must adhere to FCC interpretations of TCPA

and that judicial review of such interpretations is vested solely within the courts of appeal). Moreover, such a ruling will significantly impact the Court's reasoning with respect to the scope of discovery, summary judgment and at trial – including instructions given to the jury – depending on the FCC's ultimate promulgations.

Given that the FCC is considering core ATDS issues that not only need to be decided in this litigation, but likely are dispositive of Plaintiffs' claims, the inconsistent rulings factor weighs heavily in favor of a stay. "[A]llowing the FCC to resolve the foregoing issues prior to adjudicating the issues in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate." *See, e.g.*, *Glauser v. Twilio, Inc.*, No. C 11-2584 PJH, 2012 WL 259426, at *3 (N.D. Cal. Jan. 27, 2012) (staying putative TCPA class action because "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed"). Because the FCC is set to decide a fundamental issue in this case – whether AWL used an ATDS to call Plaintiffs and the putative class members – the Court should stay the litigation until the agency does so and this will avoid a ruling potentially inconsistent with the FCC's forthcoming guidance.

Automatic telephone dialing technology is a rapidly changing area. The need for uniformity and certainty would be best served by staying the case to defer to the FCC's rulemaking process. *See Kappelmann v. Delta Air Lines, Inc.*, 539 F.2d 165, 173 (D.C. Cir. 1976) (noting that technical and policy-making questions with industry-wide application are best made in an agency rulemaking proceeding and holding "the trial judge properly invoked the doctrine of primary jurisdiction" because "the need for uniformity and a tribunal of special competence have been shown"). These issues fall outside the conventional experience of judges and are within agency

expertise and discretionary authority. For all of these reasons, the Court should stay this case pending determination of the FCC's current rulemaking proceedings.

Numerous judges in the Southern District of Florida and other district courts in the Eleventh Circuit have stayed similar TCPA suits while awaiting guidance from the FCC. *See*, *e.g.*, *Wijesinha,* Order Administratively Closing Case (ECF 81) (staying putative TCPA class action alleging autodialed telephone calls pending the FCC's decision regarding the interpretation of an ATDS); *Buhr,* Order Granting Stay (ECF 40) (staying putative TCPA class action alleging autodialed and prerecorded message collection calls on primary jurisdiction and other grounds "pending a ruling from the FCC that clarifies the definition of 'an automatic telephone dialing system' under the TCPA"); *Secure,* Order (ECF 64) (granting motion to stay because "the FCC is currently seeking public comment and reconsidering the definition of an ATDS"); *Comprehensive Health Care Sys. of Palm Beaches, Inc. v. M3 USA Corp.*, No. 16-CV-80967, 2017 WL 4868185, at *2–3 (S.D. Fla. Oct. 6, 2017); *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798 (S.D. Fla. May 23, 2014) (ECF 105); *see also Scoma Chiropractic, PA v. Dental Equities, LLC*, No. 2:16–cv–41–FtM–99MRM, 2018 WL 2455301, at *3-4 (M.D. Fla. June 1, 2018); *Pickens v. Am. Credit Acceptance, LLC*, No. 2:14-00201, 2014 WL 4662512, at *2-3 (S.D. Ala. Sept. 19, 2014).

Cases in which courts have declined to grant such stays are distinguishable. For example, in *Karpilovsky v. All Web Leads, Inc.*, No. 1:17-cv-1307 (N.D. Ill. Oct. 3, 2018), Order (ECF 130), the court's decision turned on that court's (within the 7th Circuit) belief that the FCC's guidance on the ADTS issue may be years off. The *Karpilovsky* litigation predated the present litigation, having been filed on February 21, 2017, increasing the possible delay a stay would have caused. And the defendant's motion to stay came much later in the proceedings, a year and a half after the case was filed. In addition, the *Karpilovsky* court was not, as here, confronted with the dual

possibilities of FCC guidance and a binding decision from its circuit court of appeals on the very issue in dispute. Thus, the *Karpilovsky* court's decision is inapposite to the facts before the Court in this case.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should stay this litigation pending the Eleventh Circuit's resolution of the appeal in *Glasser v. Hilton Grand Vacations Co., LLC* and the FCC's issuance of guidance on the ATDS issues identified herein.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)</u>

I certify that the undersigned conferred with counsel for the Plaintiffs in an effort to resolve by agreement the issues raised in this motion. Plaintiffs do not consent to the relief requested.

Dated: December 10, 2019

Respectfully submitted,

By: *<u>/s/ Dianne Fischer</u>*
Lawrence D. Silverman, Esq.
Florida Bar No. 007160
lawrence.silverman@akerman.com
Dianne O. Fischer, Esq.
Florida Bar No. 994560
deedee.fischer@akerman.com
AKERMAN LLP
Three Brickell City Centre
98 SE Seventh Street, Suite 1100
Miami, FL 33131
Telephone: 305-374-5600
Facsimile: 305-374-5095
*Counsel for Insurance Care Direct, Inc.*

By: s/ Dariel Abrahamy
Garry W. O'Donnell, Esq.
garry.odonnell@gmlaw.com
Florida Bar No. 0478148
Dariel Abrahamy, Esq.
dariel.abrahamy@gmlaw.com
Florida Bar No. 0014901
Greenspoon Marder LLP
2255 Glades Road Suite 400-E
Boca Raton, FL 33431
Telephone: 561-994-2212
Facsimile: 561-807-7527
*Counsel for Health Insurance Innovations, Inc.*

By: s/ Michael Suarez
Michael F. Suarez, Esq.
mfs@kubickidraper.com
Florida Bar No. 88845
Law Offices Kubicki Draper
9100 South Dadeland Boulevard
Suite 1800
Miami, FL 33156
Telephone: 305-982-6715
Facsimile: 305-374-7846
*Counsel for CS Marketing, LLC*

By: s/ Jeffrey Backman
Jeffrey A. Backman, Esq.
jeffrey.backman@gmlaw.com
Florida Bar No. 662501
Gregg Strock, Esq.
gregg.strock@gmlaw.com
Florida Bar No. 1010140
Greenspoon Marder LLP
200 East Broward Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-527-6252
Facsimile: 954-213-0140
*Counsel for USHealth Advisors, LLC*

By: s/ Charles Norris
Mark. A. Emanuele, Esq.
mae@lydeckerdiaz.com
Florida Bar No. 541834
Charles Norris, Esq.
cn@lydeckerdiaz.com
Florida Bar No. 76576
LYDECKER | DIAZ
1221 Brickell Ave., 19th Floor
Miami, FL 33131
Telephone: 303-416-3180
Facsimile: 305-416-3190
*Counsel for MHP Insurance Solutions, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 10th day of December, 2019, which will generate notification to all known counsel of record.

By: *s/ Dianne O. Fischer*
Dianne O. Fischer