**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-24218-CIV-ALTONAGA/Louis**

ANNETTE BARNES, *et al*.,

Plaintiffs,

v.

CS MARKETING LLC, *et al*.,

Defendants.
_____________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' JOINT MOTION TO STAY**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. Plaintiffs' ATDS Allegations Are Based on Years of Discovery. ..... 2

B. Plaintiffs Completed Their ATDS Discovery. ..... 3

C. *ACA International v. FCC* ..... 4

D. *Post-ACA International v. FCC* ..... 5

E. *Marks v. Crunch San Diego, LLC* ..... 5

F. *Glasser v. Hilton Grand Vacations Co., LLC* ..... 6

III. ARGUMENT ..... 7

A. A Partial Stay Resolves All of Defendants' Concerns ..... 7

B. No Full Stay is Justified Under the Primary Jurisdiction Doctrine ..... 8

1. The potential FCC action does not raise issues of first impression. ..... 9

2. The FCC has no discretion to contravene the plain text of the TCPA. ..... 14

3. A stay will prejudice Plaintiffs and will not advance the litigation. ..... 15

C. A Stay Pending the Outcome of *Glasser* is Not Justified ..... 18

1. The outcome of *Glasser* will have no impact on this case. ..... 18

2. A stay would prejudice the Class. ..... 19

3. Defendants will suffer no hardship or inequity if this case moves forward. ..... 20

4. The orderly course of justice disfavors a stay. ..... 20

IV. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Abante Rooter and Plumbing, Inc. v. Alarm.com, Inc.*,
No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) .......... 13

*ACA Int'l v. FCC*,
885 F.3d 687 (D.C. Cir. 2018) .......... 4, 14

*Adams v. Ocwen Loan Servicing, LLC*,
366 F. Supp. 3d 1350 (S.D. Fla. 2018) .......... 6

*Ammons v. Ally Financial, Inc.*,
No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) .......... 13

*Becker v. HBN Media, Inc.*,
314 F. Supp. 3d 1342 (S.D. Fla. 2018) .......... 19, 20

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) .......... 17

*Brown v. MCI WorldCom Network Servs., Inc.*,
277 F.3d 1166 (9th Cir. 2002) .......... 8

*Carpenters Fringe Ben. Funds of Illinois v. Royal Builders, Inc.*,
2008 WL 4876856 (N.D. Ill. June 6, 2008) .......... 18

*Carroll v. SGS Auto. Servs., Inc.*,
No. CV 16-537-SDD-RLB, 2019 WL 2067938 (M.D. La. May 10, 2019) .......... 14

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) .......... 8

*DeSilva Auto. Servs.*,
Case No. 1:16-cv-790, 2018 WL 2020744 (S.D. Oh. May 1, 2018) .......... 13

*Frydman v. Portfolio Recovery Assocs., LLC*,
No. 11 CV 524, 2011 WL 2560221 (N.D. Ill. June 28, 2011) .......... 9, 10, 15, 16

*Getz v. DIRECTV, LLC*,
359 F. Supp. 3d 1222 (S.D. Fla. 2019) .......... 6, 12, 13, 15

*Glasser v. Hilton Grand Vacations Co., LLC.*,
341 F. Supp. 3d 1305 (M.D. Fla. 2018) .......... 6, 13, 19

*Gould v. Farmers Insurance Exchange*,
No. 4:17-cv-2305, 2018 WL 372924 (E.D. Mo. August 6, 2018) .......... 14, 15

*Grogan v. Aarons, Inc.*,
No. 1:18-cv-2821, Dkt. 48 (N.D. Ga. Oct. 26, 2018) .......... 14

*Heard v. Nationstar Mortg. LLC*,
No. 2:16-CV-00694-MHH, 2018 WL 4028116 (N.D. Ala. Aug. 23, 2018) .......... 12

*Jamison v. First Credit Servs., Inc.*,
290 F.R.D. 92 (N.D. Ill. 2013) .......... 8, 9, 10, 16

*Karpilovsky v. All Web Leads*,
Case No. 1:17-cv-01307, Doc. 130 (N.D. Ill. Oct. 3, 2018) .......... 13, 16

*Knapper v. Cox Communications*,
No. 17-cv-00913, 2019 WL 250430 (D. Az. Jan. 17, 2019) .......... 14, 17

**TABLE OF CONTENTS**
**(continued)**

**Page**

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .... 7, 18, 20
*Lawlor v. D.C.*,
758 A.2d 964 (D.C. 2000) .... 8
*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) .... 18, 20
*Maddox v. CBE Group, Inc.*,
2018 WL 2327037 (N.D. Ga. May 22, 2018) .... 13
*Maddox v. CBE Group, Inc.*,
No. 1:17-CV-1909-SCJ, 2018 WL 2327037 (N.D. Ga. May 22, 2018) .... 11
*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) .... passim
*Maronyan v. Toyota Motor Sales, U.S.A., Inc.*,
658 F.3d 1038 (9th Cir. 2011) .... 9, 10
*Mays v. Credit One Bank, N.A.*,
No. 116CV01151TWPDML, 2017 WL 3838687 (S.D. Ind. Sept. 1, 2017) .... 13
*McMillion v. Rash Curtis & Assocs.,*
No. 16-CV-03396-YGR, 2018 WL 3023449 (N.D. Cal. June 18, 2018) .... 13
*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) .... 11
*Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*,
46 F.3d 220 (2d Cir. 1995) .... 15
*Nicholson v. REI Energy*, LLC,
370 F. Supp. 3d 1199 (D. Or. 2019) .... 14
*O'Shea v. Am. Solar Sol., Inc.*,
No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018) .... 13
*Pieterson v. Wells Fargo Bank, N.A.*,
No. 17-CV-02306-EDL, 2018 WL 3241069 (N.D. Cal. July 2, 2018) .... 13, 14, 16
*Pimental v. Google, Inc.*,
No. C-11-02585-YGR, 2012 U.S. Dist. LEXIS 58629 (N.D. Cal. April 26, 2012) .... 10
*Pine v. A Place for Mom, Inc.*,
No. C17-1826 TSZ, 2019 WL 1531689 (W.D. Wash. Apr. 9, 2019) .... 14
*Radio Corp. of Am. v. Igoe*,
217 F.2d 218 (7th Cir. 1954) .... 18
*Reyes v. BCA Fin. Servs., Inc.*,
No. 16-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018) .... 8, 12
*Reyes v. BCA Fin. Servs.*,
No. 16-24077-CIV-GOODMAN, 2018 WL 2220417 (S.D. Fla. May 14, 2018) .... 11
*Riazi v. Ally Fin., Inc.*,
2017 WL 4269791 (E.D. Mo. Sept. 26, 2017) .... 18



1868491.1

**TABLE OF CONTENTS**
**(continued)**

**Page**

*Robinson v. Midland Funding, LLC*,
No. 10cv2261 MMA (AJB), 2011 U.S. Dist. LEXIS 40107 (S.D. Cal. April 13, 2011) ......... 10
*Sieleman v. Freedom Mortgage Corporation*,
No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018)................................. 14
*Somogyi v. Freedom Mortg. Corp.*
No. CV 17-6546 (JBS/JS), 2018 WL 3656158 (D.N.J. Aug. 2, 2018)............................ 13, 14
*Soppet v.Enhanced Recovery Co., LLC*,
679 F.3d 637 (7th Cir. 2012) ......................................................................................... 11, 15
*Swaney v. Regions Bank*,
No. 2:13-cv-00544-JHE, 2018 WL 2316452 (N.D. Ala. May 22, 2018) ............................... 11
*Swift v. Bank of Am. Corp., NB*,
No. 3:14-CV-1539-J-20PDB, 2015 WL 13333136
(M.D. Fla. June 18, 2015) ....................................................................................................... 9
*Swope v. Credit Mgmt., LP*,
No. 12-832, 2013 WL 607830 (E.D. Mo. Feb. 19, 2013)................................................ 10, 14
*Syntek Semiconductor Co. Ltd. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ................................................................................................... 8
*Thomas v. Smith-Palluck Assocs. Corp.*,
No. 217CV02001MMDCWH, 2019 WL 1586750 (D. Nev. Apr. 12, 2019) .......................... 14
*Tovar v. Midland Credit Mgmt.*,
No. 10cv2600 MMA (MDD), 2011 U.S. Dist. LEXIS 40103 (S.D. Cal. April 13, 2011) ......... 9
*Wheeler v. Portfolio Recovery Assocs., LLC*,
No. 5:18-CV-179-DAE, 2019 WL 400114 (W.D. Tex. Jan. 22, 2019).................................. 14

**Statutes**

47 U.S.C. § 227(a)(1)......................................................................................................... 4, 10
47 U.S.C. § 227(b)(2)(C) ........................................................................................................ 14

**Rules**

Fed. R. Civ. P. 1 ..................................................................................................................... 19

**Other Authorities**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*;
30 FCC Rcd. 7961 .................................................................................................................. 16
*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd 14014 132 (July 3, 2003) ................................................................................... 10
*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
23 FCC Rcd 559 (Jan. 4, 2008)............................................................................................... 11
*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
FCC 15-72 (adopted June 18, 2015 and released July 10, 2015) ............................................ 11

**TABLE OF CONTENTS**
**(continued)**

**Page**

**Regulations**

47 C.F.R. § 64.1200(f)(2) ........................................................................................................ 10

## I. INTRODUCTION

This matter is uniquely ill-suited for a stay. Defendants' Motion focuses narrowly only on whether the FCC or Eleventh Circuit *might* address what constitutes an automatic telephone dialing system ("ATDS"). Defendants, however, fail to mention that *Plaintiffs have already completed their ATDS discovery*. Plaintiffs therefore do not anticipate taking any discovery regarding the ATDS issue and would affirmatively agree to a partial stay barring all ATDS discovery and/or briefing. Plaintiffs' agreement forecloses the possibility that the Parties or Court might expend any unnecessary resources on this issue.

Defendants' Motion seeking a complete stay of the entire action would only serve to prejudice the Plaintiffs, significantly lessen the possibility of early settlement, and delay adjudication of this class action – including factual and legal issues that have nothing whatsoever to do with Defendants' use of an ATDS. Plaintiffs therefore respectfully request that the Court enter, at most, a partial stay of all ATDS discovery and/or briefing, not a full stay of this action.

A full stay is inappropriate for four additional reasons. First, this is not an issue of first impression. Whether or not the FCC provides further guidance, the statutory definition of ATDS in the TCPA itself will govern. Whatever guidance the FCC may issue in the future will not—and cannot—alter the statutory definition of an ATDS. Similarly, however the Eleventh Circuit rules in *Glasser* will not alter the statutory definition of an ATDS. Congress, the Seventh and Ninth Circuits, and dozens of courts have applied that statutory definition in case after case. Accordingly, there is simply no reason to stay this action for an indefinite period of time so that the FCC can further clarify long-decided issues that this Court is capable of resolving on its own.

Second, any potential FCC guidance on the issues in dispute is unlikely to have retroactive effect. Therefore, any potential rulemaking would not even be applicable to this case.

Third, a stay would plainly prejudice Plaintiffs by delaying resolution of this case for many years. History teaches that it takes years for the FCC to issue orders addressing the interpretation of the TCPA and even more time for appeals of such orders to be adjudicated. Such an extended delay is prejudicial to Plaintiffs and defies the mandate of Rule 1 that courts and parties adjudicate disputes in a "just" and "speedy" manner.

Finally, the potential FCC rulemaking and forthcoming decision in the *Glasser* case have nothing to do with the majority of issues in this case. *Glasser*, as discussed below, has no bearing on this case whatsoever because the dialing system used in *Glasser* is markedly different from Defendants' system. Accordingly, there is no reason to delay adjudication because this case will proceed no matter the outcome of FCC rulemaking or *Glasser*.

Defendants fail to meet their burden of showing a stay is warranted. The Motion should be denied.

## II. BACKGROUND

### A. Plaintiffs' ATDS Allegations Are Based on Years of Discovery.

In this case, Plaintiffs allege that Defendants commissioned automated telemarketing calls to them and other class members without their prior express written consent. Doc. 1, ¶ 2. Each of the calls were made pursuant to a telemarketing campaign involving Defendants and non-party, All Web Leads, Inc. ("All Web Leads"), a company that Defendants hired to make telemarketing calls on their behalf, for their benefit, and for the purpose of generating "leads" for consumers interested in purchasing insurance. *Id.*, ¶¶ 2, 37-143. Non-party All Web Leads has already paid for its role in this illegal telemarketing campaign by entering into a class action settlement agreement for $6.5 million, which was finally approved on August 8, 2019. *See Karpilovsky v. All Web Leads, Inc.*, Case No. 1:17-cv-1307 (N.D. Ill.) (Dkt. 172). *Id.* ¶ 4. This action seeks to hold Defendants accountable for their violations of the TCPA through this

telemarketing campaign, which caused robocalls to be sent out, *en masse*, to hundreds of thousands of consumers. *Id.* ¶¶ 5-6.

Plaintiffs' ATDS allegations are based on evidence obtained in the *Karpilovsky* action. That evidence includes dialer manuals and related documents, sworn discovery responses, and expert analysis. Plaintiffs already disclosed to Defendants the existence of many of those documents in their Rule 26(a) Initial Disclosures. Plaintiffs' allegations rely on that evidence. Accordingly, Plaintiffs allege that All Web Leads testified under oath that it used a predictive dialing system of the sort that constitutes an ATDS under the TCPA. *Id.* ¶¶ 116-33. Defendants' dialing system placed hundreds of thousands of calls to consumers without human intervention and had the capacity to generate telephone numbers to be called using a random or sequential number generator. *Id.* ¶¶ 122-33. This dialing system was driven by software that utilizes an algorithm that determines when All Web Leads will make a phone call on behalf of Defendants. *Id.* Defendants therefore made these calls by using equipment which meets that statutory definition of ATDS because it has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person). *Id.*; *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018).[1]

**B. Plaintiffs Completed Their ATDS Discovery.**

Plaintiffs do not anticipate taking any more discovery regarding the ATDS issue. There are two primary reasons why further discovery is not necessary. First, the discovery taken was comprehensive. It includes documents describing Defendants' ATDS, sworn discovery responses from All Web Leads, call data extracted from Defendants' ATDS, and analysis from

[1] Plaintiffs do not allege, nor does the evidence support, the use of any click-to-dial feature on Defendants' dialer such as the one used in *Glasser*.

Plaintiffs' expert. Second, as further explained below, the discovery is sufficient to satisfy any and all definitions of what constitutes an ATDS, including the statutory definition, the current definitions set forth by the FCC and within the Eleventh Circuit, and any subsequent definition the FCC or Eleventh Circuit *might* provide. For these reasons, Plaintiffs agree to a partial stay of all ATDS discovery and briefing. If Defendants do not want to expend any time and resources on this issue, they are free not to do so.

**C. *ACA International v. FCC***

In *ACA International*, the D.C. Circuit[2] considered several challenges to a 2015 Declaratory Ruling and Order by the FCC. *ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018). The court addressed, among others, the following issue: which sorts of automated dialing equipment qualify as an ATDS and are thus subject to the TCPA's restrictions on unconsented calls.

Under the TCPA, "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" qualifies as an ATDS. 47 U.S.C. § 227(a)(1). Explaining that this definition "naturally raises two questions: (i) when does a device have the "capacity" to perform the two enumerated functions; and (ii) what precisely are those functions?," the D.C. Circuit set aside the FCC's guidance on both points. *ACA Int'l*, 885 F.3d at 695.

The court determined that the 2015 Declaratory Ruling gave "no clear answer" to the question "does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity?" *Id.* at 702-03. It also

[2] In their brief, Defendants incorrectly claim that *ACA* is an Eleventh Circuit case. Dkt. 60 at 3 ("In the case of *ACA International v. FCC*, the Eleventh Circuit discussed . . ."). This is obviously wrong.

found that the FCC's 2015 Order lacked clarity as to the basic functionality of such equipment, which "compounds the unreasonableness of the Commission's expansive understanding of when a device has the 'capacity' to perform the necessary functions." *Id.* at 703. The primary concern driving the D.C. Circuit's analysis was that everyday smartphones would qualify as an ATDS. *Id.* at 698. That concern is not present here.

**D. *Post-ACA International v. FCC***

Following *ACA-International*, on May 3, 2018, a petition was filed with the FCC seeking a declaratory ruling (1) confirming that a device must use a random or sequential number generator to store or produce numbers and dial those numbers without human intervention in order to qualify as an ATDS, and (2) clarifying that only calls made using actual ATDS capabilities fall within the scope of the TCPA. *See* Petition for Declaratory Ruling, *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Dkt. No. 02-278 (May 3, 2018) at 27. Then, on May 14, 2018, the FCC issued a Public Notice seeking comments on several TCPA-related issues, including, among others: (1) what constitutes an ATDS, (2) how to treat calls to reassigned numbers, and (3) how a party may revoke prior express consent. Public Notice, CG Dkt. Nos. 18-152 & 02-278 (May 14, 2018) at 1-3. There is no telling if, or when, the FCC will provide additional guidance on these issues.

**E. *Marks v. Crunch San Diego, LLC***

On September 20, 2018, the Ninth Circuit issued its *Marks* decision. The Ninth Circuit held, based on the TCPA's statutory language, that a predictive dialing system—such as the one Defendants used in this case—constitutes an ATDS under the TCPA. *Marks,* 904 F.3d at 1053. *Marks* stated: "we read § 227(a)(1) to provide that the term "automatic telephone dialing system" means equipment which has the capacity—(1) to store numbers to be called or (2) to

produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Id.*

Courts within the District have followed *Marks*. *See, e.g.*, *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355 (S.D. Fla. 2018) ("the Court agrees with the reasoning and conclusions of [*Marks*]."); *Getz v. DIRECTV, LLC*, 359 F. Supp. 3d 1222, 1230 (S.D. Fla. 2019) (quoting *Marks* and *Adams*).

**F. *Glasser v. Hilton Grand Vacations Co., LLC***

In *Glasser*, a consumer filed a class action in the U.S. District Court for the Middle District of Florida against a telemarketer alleging it violated the TCPA by using an ATDS to make calls to consumers without their consent. *Glasser v. Hilton Grand Vacations Co., LLC.*, 341 F. Supp. 3d 1305, 1307 (M.D. Fla. 2018). The defendant moved for summary judgment arguing it did not use an ATDS. *Id.* at 1307, 1313. In considering the motion, the district court notably acknowledged "[a] predictive dialer may fall within the TCPA's definition of an ATDS, even though it may not store or produce telephone numbers to be called, using a random or sequential number generator." *Id*. 1313. However, the district court granted the motion because there was no indication that the system used a predictive algorithm to engage in dialing, but rather, it initiated calls when a button was clicked by an employee, and each click provided a telephone number to the dialing system so that those numbers could be dialed by that system, thereby initiating outbound telephone calls. *Id*. at 1313-14. The *Glasser* plaintiff then appealed the district court's order on the issue of whether a computer phone system that requires agents to click a button to launch calls constitutes an ATDS under the TCPA. The *Glasser* case is now pending before the Eleventh Circuit. *See Glasser v. Hilton Grand Vacations Co., LLC*, Case No. 18-14499. As discussed above, this case does not involve a computer phone system that requires

agents to click a button to launch calls but rather a predictive dialing system of the sort the *Glasser* court acknowledged was an ATDS.

## III. ARGUMENT

### A. A Partial Stay Resolves All of Defendants' Concerns.

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). But "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* at 254-55.

While Plaintiffs do not believe any stay is justified, they nonetheless have agreed to a partial stay to address all of Defendants' concerns.

Defendants essentially concede that most of the issues in this case have nothing to do with the ATDS issue. For example, Defendants' pending motion to dismiss does not even mention any ATDS allegations. Defendants' stay request has no bearing on that motion.[3] Indeed, Defendants brief concedes that the ATDS issue will not be decided until "summary judgment and trial" and gives the example of needing to provide accurate jury instructions. Dkt. 63 at 6. Plaintiffs' agreement to a partial stay of ATDS discovery and briefing completely addresses that concern.

A full stay would instead stall the case and preclude any possibility of settlement. Here, absent a stay, Plaintiffs' believe that the possibility of early resolution is quite high because Plaintiffs have already obtained discovery regarding the size and scope of the proposed class and

---

[3] Defendants' motion to stay essentially concedes that its motion to dismiss will be denied. Because Defendants' request for a discovery stay would only be relevant if Defendants' motion to dismiss is denied, Defendants' motion to stay presumes that the Court will deny Defendants' motion to dismiss.

have offered to provide it to Defendants so long as Defendants agree to an appropriate case protective order. *See* Dkt. 63 (Joint Scheduling Report) at 1-2. A full stay, however, would foreclose any possibility of early resolution.

*Reyes v. BCA Fin. Servs, Inc.*, upon which Defendants primarily rely, provides an excellent example of the best way for a court to balance competing interests and exercise its prudential discretion to stay. In that case, the parties proceeded to class certification by completing discovery and briefing issues that did not rely on a merits determination of the ATDS issue. *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (certifying class). Only after the court proceeded to a point where it was poised to make a merits determination on the ATDS issue did it enter a stay. *Id.* at Dkt. 200. The same is true here. The Parties and the Court can address the factual and legal issues in this case that have nothing to do with Defendants' use of an ATDS. To the extent there is any ambiguity about what constitutes an ATDS, the Parties can defer that determination to a later date. Plaintiffs respectfully submit that this is the prudent and most efficient way to manage the docket for this matter.

### B. <u>No Full Stay is Justified Under the Primary Jurisdiction Doctrine</u>

The primary jurisdiction doctrine "applies in a limited set of circumstances," *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008), and "does not require that all claims within an agency's purview be decided by the agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). Nor is it intended "to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 98 (N.D. Ill. 2013) (quotation omitted). Rather, "it is a doctrine used by the courts to allocate initial decision-making responsibility between agencies and courts where such jurisdictional overlaps and

potential for conflicts exist." *Lawlor v. D.C.*, 758 A.2d 964, 974 (D.C. 2000) (citation omitted); *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (same). The doctrine "should be invoked sparingly since it often results in added expense and delay." *Frydman v. Portfolio Recovery Assocs., LLC*, No. 11 CV 524, 2011 WL 2560221, at *2 (N.D. Ill. June 28, 2011).

Primary "jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an *issue of first impression*, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Jamison*, 290 F.R.D. at 98 (emphasis added and citation omitted); *see also Swift v. Bank of Am. Corp., NB*, No. 3:14-CV-1539-J-20PDB, 2015 WL 13333136, at *2 (M.D. Fla. June 18, 2015) (denying motion to stay TCPA claims pending FCC rulemaking). In determining whether to apply it, courts consider factors including whether (1) the issue is not within the conventional experiences of judges, (2) the issue involves technical or policy considerations within the agency's particular field of expertise, (3) the issue is particularly within the agency's discretion, or (4) there exists a substantial danger of inconsistent rulings. *Id.*; *see also Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1048-49 (9th Cir. 2011) (same).

Here, what constitutes an ATDS is simply not a matter of first impression. Rather, the issue has been repeatedly addressed by Congress, by the FCC, and by the courts over a period of decades spanning back to when the TCPA was first passed in 1991.

**1. <u>The potential FCC action does not raise issues of first impression.</u>**

When a pending FCC action does not raise an issue of first impression, a district court should deny a motion to stay litigation. *See, e.g., Tovar v. Midland Credit Mgmt.*, No. 10-2600, 2011 WL 1431988, at *4 (S.D. Cal. April 13, 2011) (denying motion to stay pending FCC

action, noting that the issues "are not ones of first impression").[4] Here, the relevant issue the FCC may readdress—the definition of an ATDS—is not one of first impression. Rather, the issue presents a question of statutory interpretation that has already been addressed by Congress, the Seventh and Ninth Circuits and other courts, including in this District, and the FCC itself. Interpreting a statute is standard grist for the judicial mill, comfortably "within the conventional experiences of judges." *Maronyan*, 658 F.3d at 1048-49.

The TCPA itself defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The corresponding regulation defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." 47 C.F.R. § 64.1200(f)(2). Whether a particular device functions as an ATDS is therefore a straightforward question of applying this statutory language to the particular facts of a case. *See, e.g., Frydman*, 2011 WL 2560221, at *4 (denying primary jurisdiction motion, and explaining that "[w]hether the predictive dialers used by defendant are 'automatic telephone dialing systems' or 'autodialers' as these terms are used in the TCPA is a straightforward interpretive question addressed by prior FCC rulings and some case law").

Indeed, the FCC has consistently addressed the meaning of ATDS based on the statutory text in the same fashion dating back to 2003. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014 ¶ 132 (July 3, 2003) ("in

[4] *See also Jamison*, 290 F.R.D. at 101 (same); *Frydman*, 2011 WL 2560221, at *4 (same); *Robinson v. Midland Funding, LLC*, No. 10-226, 2011 WL 1434919, at *5 (S.D. Cal. April 13, 2011) (same); *Pimental v. Google, Inc.*, No. 11-02585, 2012 WL 1458179, at *3-4 (N.D. Cal. April 26, 2012) (same); *Swope v. Credit Mgmt., LP*, No. 12-832, 2013 WL 607830, at *5 (E.D. Mo. Feb. 19, 2013) (same).

order to be considered an automatic telephone dialing system, the equipment need only have the capacity to store or produce telephone numbers"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, ¶ 12 (Jan. 4, 2008) (rejecting arguments that equipment is an ATDS "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists"); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15-72, ¶ 10 (adopted June 18, 2015 and released July 10, 2015) ("We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers."). Courts within this Circuit continue to rely upon those rulings post-*ACA*. *See, e.g.*, *Maddox v. CBE Group, Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018); *Swaney v. Regions Bank*, No. 2:13-cv-00544-JHE, 2018 WL 2316452, at *2 (N.D. Ala. May 22, 2018) (denying defendant summary judgment on issue of whether a predictive dialer is an ATDS subsequent to *ACA Int'l*, noting "the continuing validity of the 2003 FCC Order" and the lack of human intervention as a basis to deny defendant's motion); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-GOODMAN, 2018 WL 2220417 (S.D. Fla. May 14, 2018) (holding that the FCC's 2003 and 2008 predictive dialer rulings remain binding).

Many courts have also opined on the meaning of ATDS based on the statutory text. The Seventh Circuit recognized that "predictive dialers" of the sort used by Defendants, i.e., dialers that employ lists of numbers rather than generate numbers, have the capacity described in the TCPA. *See Soppet v.Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012); *see also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (holding—

based on the "clear language of the TCPA"—that "predictive dialers" constitute an ATDS under the TCPA); *Marks,* 904 F.3d at 1053 ("we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically"). Courts have done so based on a plain reading of the TCPA because "the term '[ATDS]' means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person)." *Marks,* 904 F.3d at 1053.

Therefore, even after *ACA International* invalidated the FCC's 2015 interpretation, courts within this District and throughout the country are still capable of determining whether a predictive dialer qualifies as an ATDS based on the statutory text. *See, e.g., Getz,* 359 F. Supp. 3d at 1230 (Otazo-Reyes, J.) (quoting *Marks*, 904 F.3d at 1053) (finding that a device need not generate random or sequential numbers to qualify as an ATDS under the TCPA so long as it stores numbers and dials them automatically); *Adams,* 366 F. Supp. 3d at 1355(Dimitrouleas, J.) (explaining that the proposed statutory definition advanced by BCA—that calls must be placed by a random or sequential number generator—is "overly restrictive," and adopting the Marks court's definition of an ATDS); *Reyes v. BCA Fin. Servs, Inc.*, 2018 WL 2220417, at *2-13 (S.D. Fla. May 14, 2018) (finding that a predictive dialer is an ATDS even though it "cannot generate random or sequential phone numbers"); *Heard v. Nationstar Mortg. LLC,* No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *6 (N.D. Ala. Aug. 23, 2018) (similar). The overwhelming majority of courts to consider the issue in the wake of *ACA International* have likewise held

based on the statutory text that predictive dialers are autodialers under the TCPA.[5] Indeed, even the *Glasser* court appears to recognize a predictive dialer constitutes an ATDS. *Glasser*, 341 F. Supp. 3d at 1313 ("[a] predictive dialer may fall within the TCPA's definition of an ATDS").

Thus, because this is not an issue of first impression, courts across the country – including in this District -- have denied stay requests identical to the one sought here by Defendants. For example, in *Somogyi v. Freedom Mortg. Corp.*, the court denied a stay request and held that predictive dialers fall within the meaning and statutory definition of ATDS under the TCPA:

> Since the statutory definition of an ATDS (as opposed to the FCC's interpretation of an ATDS) was not questioned in either *ACA International* or *Dominguez*, the Court finds it is unnecessary to issue a stay at the present time. Whatever guidance the FCC may issue in the future will not alter the statutory definition of an ATDS. In other words, telephone dialing equipment that "has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator" qualifies as an ATDS today, just as it will following any future FCC guidance.

No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018); *see also Getz,* 359 F. Supp. 3d at 1230; *Mays v. Credit One Bank, N.A.*, No. 116CV01151TWPDML, 2017 WL 3838687, at *3 (S.D. Ind. Sept. 1, 2017) (denying identical stay request because the issues were already "adjudicated by the Seventh Circuit"); *Karpilovsky v. All Web Leads*, Case No. 1:17-cv-01307, Doc. 130 (N.D. Ill. Oct. 3, 2018) ("Due especially to the possibly years−long wait the

[5] *See, e.g., id.*; *McMillion v. Rash Curtis & Assocs.,* No. 16-CV-03396-YGR, 2018 WL 3023449, at *1 (N.D. Cal. June 18, 2018) (denying reconsideration of court's pre-ACA International order that the dialers at issue "were ATDSs because they possessed 'predictive dialing' capabilities which allowed them to operate without human intervention"); *Swaney*, 2018 WL 2316452, at *2 (similar); *Maddox*, 2018 WL 2327037, at *4 (similar) *DeSilva Auto. Servs*., Case No. 1:16-cv-790, 2018 WL 2020744, at *8 n.9 (S.D. Oh. May 1, 2018) (similar); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069 (N.D. Cal. July 2, 2018) (similar); *Ammons v. Ally Financial, Inc.*, No. 3:17-cv-00505, 2018 WL 3134619 (M.D. Tenn. June 27, 2018) (similar); *O'Shea v. Am. Solar Sol., Inc.*, No. 3:14-CV-00894-L-RBB, 2018 WL 3217735 (S.D. Cal. July 2, 2018) (similar); *Abante Rooter and Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) (similar).

Court and parties might endure before the FCC proclaims its ruling (if any), the Court denies the motion to stay.")[6] Accordingly, the Court is well-equipped to determine whether Defendant's autodialer qualifies as an ATDS under the TCPA based on the plain statutory text alone.

**2. The FCC has no discretion to contravene the plain text of the TCPA.**

A stay under the primary jurisdiction doctrine is also not justified because the issue is not within the FCC's discretion. Although the FCC has the authority to interpret the TCPA, any such interpretation cannot contravene the plain text of the statute. *See Swope*, 2013 WL 607830, at *5 (explaining that the definition of an ATDS "is not an issue that requires agency expertise or implicates agency discretion"); *Somogyi*, 2018 WL 3656158, at *4 (future FCC guidance "will not alter the statutory definition of an ATDS"); *cf.* 47 U.S.C. § 227(b)(2)(C) (granting the FCC discretion to determine whether to exempt certain calls to cellular telephones from the TCPA). Nor does the FCC have discretion to adopt an interpretation that is unreasonable in light of the plain language and purpose of the statute. *ACA Int'l*, 885 F.3d at 698 (observing that the FCC interpretation "lies considerably beyond the agency's zone of delegated authority").

---

[6] *See also Pine v. A Place for Mom, Inc.*, No. C17-1826 TSZ, 2019 WL 1531689, at *2 (W.D. Wash. Apr. 9, 2019) (denying identical stay request under primary jurisdiction doctrine); *Knapper v. Cox Communications*, No. 17-cv-00913, 2019 WL 250430, *2 (D. Az. Jan. 17, 2019) (same); *Sieleman v. Freedom Mortgage Corporation*, No. CV 17-13110 (JBS/JS), 2018 WL 3656159 (D.N.J. Aug. 2, 2018) (same); *Pieterson*, 2018 WL 3241069, at *5 (same); *Gould v. Farmers Insurance Exchange*, No. 4:17-cv-2305, 2018 WL 372924 (E.D. Mo. August 6, 2018) (same); *Grogan v. Aarons, Inc.*, No. 1:18-cv-2821, Dkt. 48 (N.D. Ga. Oct. 26, 2018) (same); *Nicholson v. REI Energy*, LLC, 370 F. Supp. 3d 1199, 1206 (D. Or. 2019) (same); *Wheeler v. Portfolio Recovery Assocs., LLC*, No. 5:18-CV-179-DAE, 2019 WL 400114, at *4 (W.D. Tex. Jan. 22, 2019); *Carroll v. SGS Auto. Servs., Inc.*, No. CV 16-537-SDD-RLB, 2019 WL 2067938, at *2 (M.D. La. May 10, 2019) (same); *Thomas v. Smith-Palluck Assocs. Corp.*, No. 217CV02001MMDCWH, 2019 WL 1586750, at *3 (D. Nev. Apr. 12, 2019) (same). Worth noting, while at least 19 courts, including one in this District, have rejected defendants' motions to stay TCPA actions in the wake of *ACA International*, Defendants are only able to muster three cases in support of their position. *See* Doc. 60 at 6-7 citing *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, 19-20073-CIV (S.D. Fla.), Order Administratively Closing Case [ECF 81], filed July 15, 2019; *Buhr v. ADT LLC*, No. 18-cv-80605, Dkt. No. 40 (S.D. Fla. 25, 2018); *Secure v. Ultimate Fitness Group, LLC,* No. 18-20483-Div, Order Granting Motion to Stay [ECF No. 64], filed March 18, 2019 (S.D. Fla. 2019).

Here, the "basis" for Plaintiffs' claims with respect to the autodialer is the plain text of the TCPA. Based on the plain text, courts, including the Seventh and Ninth Circuits, ***and in this District***, have already found that predictive dialers of the sort Defendants used constitute an ATDS under the TCPA. *See Marks*, 904 F.3d at 1053 (finding predictive dialers ATDSs based on the plain text of the TCPA); *Soppet*, 679 F.3d at 638-39 (dialers that employ lists of numbers rather than generate numbers, have the capacity described in the TCPA); *Getz*, 359 F. Supp. 3d at 1230 (similar). Accordingly, this factor also weighs against staying the case.

**3. <u>A stay will prejudice Plaintiffs and will not advance the litigation.</u>**

Courts weigh the benefits of applying the primary jurisdiction doctrine against the potential litigation costs resulting from complications and delay. *Frydman, 2011 WL 2560221*, at *7; *see also Nat'l Commc'ns Ass'n, Inc. v. American Tel. and Tel. Co.*, 46 F.3d 220, 223 (2d Cir. 1995). A stay will not serve judicial economy here.

**a. <u>A stay would be indefinite.</u>**

No one knows when the FCC will issue an order or multiple orders, or if it will ever even do so. *See* FCC, Understanding FCC Processes ("After considering comments and reply comments to a Notice of Proposed Rulemaking, the FCC *may* issue a Report & Order.") (emphasis added).[7]

Even if the FCC acts, the delay could be years-long. *See, e.g.*, *Gould*, 2018 WL 3729294, at *1 (denying identical stay request because "such a process will likely take years and may still fail to resolve the precise issue involved in the case"). The Seventh Circuit in *Soppet*, for example, noted that the FCC petition that resulted in a 2008 FCC declaratory ruling was initiated

[7] https://www.fcc.gov/general/understanding-fcc-processes.

in 2005. *Soppet*, 679 F.3d at 643. *Frydman* likewise recognized that the delay encountered waiting for an agency decision is often lengthy. 2011 WL 2560221, at *7.[8]

Indeed, the FCC only issued its 2015 order regarding ATDS's after approximately *six years* of comments to various public notices. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*; 30 FCC Rcd. 7961, 8047-48. The 2015 order was then appealed and three years later the D.C. Circuit issued its opinion on the 2015 order in *ACA Int'l*. Thus, it took nearly a decade from the time the FCC issued public notices that formed the basis of its 2015 order to the time the D.C. Circuit issued its opinion.

Moreover, any further FCC guidance may be appealed to the D.C. Circuit again. Defendants would inevitably ask this Court to stay the case pending resolution of such an appeal. One court that recently denied an identical motion to stay based on the FCC's issuance of a public notice in light of *ACA International* held:

> The timing of a new order from the FCC is also uncertain. The FCC has expedited the public comment period, but that does not guarantee that an order will be issued in the immediate or near future. This process can take years. And . . . the FCC's order will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling. . . . [T]his cycle of staying a case while an FCC order is pending only to have the FCC order challenged in court has played out before, demonstrating the real possibility of indefinite delay.

*Pieterson*, 2018 WL 3241069, at *5; *see also Karpilovsky*, 1:17-cv-01307, Doc. 130 (similar); *Gould,* 2018 WL 3729294, at *1 (similar).

Granting Defendants' motion to stay would indefinitely delay this case and deny class members their day in Court. This manifestly prejudices Plaintiffs and the Class.

---

[8] *See also Jamison*, 290 F.R.D. at 101-02 ("[T]he fact the FCC issued a public notice requesting comments on a petition that could potentially result in a change in the FCC's position is simply not enough of a reason for this Court to stay this action.")

**b. A stay would not advance the litigation.**

It is (at best) speculation that the FCC's order, even if issued in the near future, would achieve judicial economy here.

First, no matter the outcome of any potential FCC rulemaking, this case will proceed. The discovery on the autodialer issue will be the same. Indeed, Plaintiffs' ATDS discovery has already been completed. A factfinder will eventually apply controlling law to the facts unearthed in discovery to decide whether the calling equipment that Defendants used is an autodialer under the statute and well-established precedent. In other words, the issue will remain in the case and be the subject of discovery.

Second, it is likely that whatever ruling the FCC makes will apply only prospectively, not retrospectively. *Knapper*, 2019 WL 250430, at *3 (denying identical stay request because "the Court finds that that rule, along with the one recently adopted, would likely be applied ***prospectively***, and, thus, would have little effect on this case addressing past harm") (emphasis added); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law."). In that event, Plaintiffs and the Class are left in a position where the case has been unnecessarily delayed for years, evidence is potentially lost and witnesses are potentially unavailable. This is not judicial economy.

Finally, while Defendants suggest that any forthcoming rulemaking will be impactful on the ATDS issue in the case, conflicting authorities issued in light of various FCC's orders establishes that the FCC's next order is highly unlikely to fully settle the issue of what technologies are considered to be an ATDS. Rather, it will likely lead to more litigation, more appeals, varying interpretations among the courts, and more rulemaking. Needless to say, it is imprudent to try and predict precisely what the FCC's next order will hold and how various

courts will apply and interpret the order. For these reasons, it is clear a stay would not advance the litigation.

### C. A Stay Pending the Outcome of *Glasser* is Not Justified

While this Court has discretion to stay the case, it is Defendants' heavy burden to establish that a stay is warranted. *Carpenters Fringe Ben. Funds of Illinois v. Royal Builders, Inc.*, 2008 WL 4876856, at *2 (N.D. Ill. June 6, 2008); *Riazi v. Ally Fin., Inc.*, 2017 WL 4269791, at *3 (E.D. Mo. Sept. 26, 2017) (similar). A stay is only warranted if Defendants establish "a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). Being "required to defend a suit, without more, does not constitute" sufficient "hardship or inequity" to justify a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). In determining whether to stay a case, the Court considers "the potential prejudice or hardship to the parties, as well as the interest of judicial economy." *Riazi*, 2017 WL 4269791 at *3. Stays of cases are rarely granted because "only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Defendants fall far short of establishing their heavy burden that a stay is warranted.

#### 1. The outcome of *Glasser* will have no impact on this case.

As an initial matter, the outcome of *Glasser* will have no impact on this case. As Defendant's own Motion acknowledges, in *Glasser* the Eleventh Circuit will address the narrow issue of whether a computer phone system that requires agents to click a button to launch calls constitutes an ATDS. Doc. 60 at 4-5 ("the dialing system used by the defendant required a clicker agent to manually click a button to place calls"). This case does not involve a computer

phone system that requires agents to click a button to launch calls. Rather, it involves a predictive dialing system driven by software that utilized an algorithm to place hundreds of thousands of calls without human intervention. *See supra* at 3-4. This equipment had the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person). *Id.* This is precisely the type of dialer that the *Glasser* court acknowledged constitutes an ATDS under the TCPA. *See Glasser*, 341 F. Supp. 3d at 1307 ("[a] predictive dialer may fall within the TCPA's definition of an ATDS"). Accordingly, whether or not a computer phone system that requires agents to click a button to launch calls constitutes an ATDS under the TCPA—which is precisely what will be addressed in *Glasser*—simply has no bearing on this case. Thus, it makes no sense to stay the case pending the outcome of *Glasser*.

**2. <u>A stay would prejudice the Class.</u>**

Here, prejudice to Plaintiffs is not just a "fair possibility," but a near certainty. As Your Honor has previously acknowledged, a stay of the type Defendants seek, i.e., pending the outcome of *Glasser*, "would amount to an indefinite stay." *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342, 1346 (S.D. Fla. 2018) (Altonaga, J.) (denying similar stay request in TCPA action based on outcome of Eleventh Circuit decision). This would prejudice Plaintiffs and proposed class members from "fading memories" and potential loss of evidence. *Id.* Moreover, Plaintiffs and the proposed class would be deprived of their entitlement to a "just, speedy, and inexpensive determination" of their claims. Fed. R. Civ. P. 1. For these reasons, a stay pending the outcome of *Glasser* would be inappropriate. *Becker*, 314 F. Supp. 3d at 1346 (denying similar stay request in TCPA action).

**3. Defendants will suffer no hardship or inequity if this case moves forward.**

By contrast, Defendants have not established any hardship if this case moves forward. Here, the only supposed hardship Defendants seem to articulate is that they will be forced to continue defending the lawsuit. But, as one court noted, "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" justifying a stay. *Lockyer*, 398 F.3d at 1112. For these reasons, the indefinite delay that would result from a stay and attendant prejudice to Plaintiffs will outweigh any potential benefits—there are none—of waiting for the Eleventh Circuit to rule on an issue that is not even present in this case.

**4. The orderly course of justice disfavors a stay.**

Defendants' argument that a delay will inform the merits of the Parties' respective claims and defenses is speculative and misconstrues the applicable standards. As discussed above, it is highly unlikely that whatever decision the Eleventh Circuit issues will impact this case since it does not involve a computer phone system that requires agents to click a button to launch calls. Moreover, even if it did—which it does not—a litigant is not entitled to a stay in order to shape the law to its advantage in an unrelated case—with no definite resolution date. *Landis*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside" to await a ruling in another action."); *see also Becker,* 314 F. Supp. 3d at 1346 ("the interest of judicial economy in having one less active case on the undersigned's docket is insufficient reason to enter a stay and delay litigation").

## IV. CONCLUSION

For these reasons, Plaintiffs respectfully request that Defendant's Motion be denied.

Dated: December 16, 2019 Respectfully submitted,

/s/ James D. Sallah

**SALLAH ASTARITA & COX, LLC**
James D. Sallah
Florida Bar No. 0092584
Email: jds@sallahlaw.com
Jeffrey L. Cox
Florida Bar No. 0173479
Email: jlc@sallahlaw.com
3010 North Military Trail, Ste. 210
Boca Raton, Florida 33431
Telephone: (561) 989-9080
Facsimile: (561) 989-9020

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Daniel M. Hutchinson (*pro hac vice*)
Email: dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Jonathan D. Selbin (*pro hac vice*)
Email: jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

**KOZONIS & KLINGER, LTD.**
Gary M. Klinger (*pro hac vice*)
Email: gklinger@kozonislaw.com
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 283-3814
Facsimile: (773) 496-8617

*Attorneys for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 16, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ James D. Sallah
James D. Sallah